**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

VICTORIA INEZ GILL,

*Plaintiff*,

v.

RECOVER-CARE ROSSVILLE LLC d/b/a ROSSVILLE HEALTHCARE AND REHABILITATION CENTER,

*Defendant*.

Case No. 25-4112-AJP-BGS

**MEMORANDUM AND ORDER**

Plaintiff Victoria Inez Gill filed suit against Defendant Recover-Care Rossville LLC d/b/a Rossville Healthcare and Rehabilitation Center asserting a race discrimination claim and a retaliation claim in violation of Title VII and the Kansas Act Against Discrimination ("KAAD"). Before the Court is Defendant's Motion to Dismiss, or alternatively, for Summary Judgment (Doc. 6). Defendant asserts that Plaintiff failed to disclose her claims in her bankruptcy filing and thus seeks dismissal due to judicial estoppel. For the reasons stated below, the Court denies Defendant's motion.

## I. Factual and Procedural Background[1]

*Employment Facts*

On May 3, 2023, Plaintiff, an African American female, was hired by Defendant as a Certified Medication Aide ("CMA"). She alleges that in June 2023, she overheard a white co-worker use a racially derogatory slur. Plaintiff filled out a grievance form and submitted it, but she did not receive any communication back.

In July 2023, another white co-worker used a racially derogatory slur directly in a conversation with Plaintiff. When Plaintiff received her July 21, 2023, paycheck, she noticed a discrepancy in pay and reported that issue. On July 24, she complained to Defendant's Vice President regarding the inaccurate pay and that she believed it was retaliation. That same day, Plaintiff received a disciplinary notice for allegedly failing to properly administer medication.

On July 27, 2023, Plaintiff learned that she would no longer receive incentives and bonus pay for working weekends. Plaintiff expressed to Defendant's human resources department that she believed it was an act of retaliation. On August 28, 2023, Plaintiff dually filed her first Charge of Discrimination with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC").

In late October 2023, Plaintiff alleges that another co-worker made a comment about her race and intentionally splashed hand sanitizer in her face and spilled hot soup on Plaintiff. She reported the behavior of her co-worker to the

---

[1] The facts in this section are taken from Plaintiff's Complaint unless otherwise cited.

manager on duty and requested to go home, which was denied. Plaintiff met with Defendant's leadership team several days later to discuss her complaints and requested assignment away from the co-worker. Plaintiff was scheduled with the co-worker several times in November and December.

On or around December 30, 2023, Defendant had not taken any action in response to Plaintiff's complaint, and Plaintiff submitted a letter asking Defendant to employ her on a PRN basis.[2] On January 5, 2024, Plaintiff received a letter that Defendant did not have a PRN position available. Plaintiff claims she was constructively discharged.

On February 7, 2024, Plaintiff filed her second Charge of Discrimination with the KHRC and EEOC. Plaintiff received a Notice of Right to Sue on this charge on August 29, 2025. On September 8, 2025, Plaintiff received a Notice of Right to Sue on her first charge. On November 26, 2025, Plaintiff filed this lawsuit asserting race discrimination and retaliation claims under Title VII and the KAAD.

*Bankruptcy Facts*[3]

On August 7, 2023, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Kansas. In her Schedule A/B: Property, Plaintiff checked the box "no" in response to the question: "[c]laims against third

---

[2] Plaintiff does not define PRN, but it appears that it is another type of nursing position.

[3] "Facts 'subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment.'" *Mid-South Iron Workers Welfare Plan v. Harmon*, 645 F. App'x 661, 665 (10th Cir. 2016) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006)). The Court "may take judicial 'notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.'" *Id.* at 665–66 (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)). The Court takes judicial notice of Plaintiff's bankruptcy filings.

parties, whether or not you have filed a lawsuit or made a demand for payment," and examples of possible claims included "[a]ccidents, employment disputes, insurance claims, or rights to sue." Doc. 7-4 at 22. Plaintiff also checked "no" in response to the question asking her to disclose "[o]ther contingent and unliquidated claims of every nature." *Id.* She signed the bankruptcy petition, "under penalty of perjury that the information provided is true and correct." *Id.* at 7. On December 19, 2023, Plaintiff filed her Amended Bankruptcy Plan. The Bankruptcy Court confirmed Plaintiff's three-year Amended Plan on January 31, 2024. The Order confirming the Amended Plan stated that Plaintiff "shall timely report to the Trustee any events affecting disposable income [which are not projected on Schedules I and J,] including but not limited to tax refunds, inheritances, prizes, lawsuits, gifts, etc., that are received or receivable during the pendency of the case." (Doc. 7-8 at 2).

*Procedural History*

As noted above, Plaintiff filed this lawsuit on November 26, 2025. On February 3, 2026, Defendant filed a Motion to Dismiss, or alternatively, a Motion for Summary Judgment.[4] It asserts that judicial estoppel bars Plaintiff's claims.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon

---

[4] This case was reassigned to the undersigned in July 2026. The Court will only address Defendant's motion under Rule 12(b)(6) standards.

which relief can be granted. Upon such motion, the court must determine whether a complaint contains sufficient factual allegations to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but it need not afford such a presumption to legal conclusions. *Id.* at 678–79. Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities. *See id.* at 678.

## III. Analysis

Defendant requests dismissal of Plaintiff's lawsuit due to judicial estoppel based on Plaintiff's failure to disclose her claims in her bankruptcy proceeding.

"When a debtor files for bankruptcy, a bankruptcy estate is created comprising the debtor's property." *Keathley v. Buddy Ayers Const., Inc.*, 608 U.S. 647, 650 (2026) (citing 11 U.S.C. § 541(a)). The property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement" of the case, "including pending and unliquidated claims against third parties." *Id.* (citations omitted). "[F]or bankruptcy cases proceeding under Chapter 13, the estate also includes property—and therefore claims—that the debtor acquires after the bankruptcy case commences but before it is closed, dismissed, or converted to a case under another chapter." *Id.* (citations omitted). "To

facilitate the creation of an accurate bankruptcy estate, the Bankruptcy Code imposes disclosure obligations on debtors[,]" including the Schedule A/B: Property, which lists possible claims. *Id.* at 651.

"Judicial estoppel is an 'equitable doctrine' intended 'to protect the integrity of the judicial process,' both by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment,' and by preventing the 'risk of inconsistent court determinations.'" *Id.* at 654 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001)). Courts typically consider three nonexclusive factors when determining whether judicial estoppel is appropriate. *Patriot Mfg. LLC v. Hartwig, Inc.*, 996 F. Supp. 2d 1120, 1124 (D. Kan. 2014) (citing *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087 (10th Cir. 2013)). First, the Court considers whether a party's later position is "clearly inconsistent" with its previous position. *New Hampshire*, 532 U.S. at 750 (citations omitted). Second, the Court considers "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (quotation marks and citation omitted). And the third consideration is "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751 (citations omitted).

"These factors are not meant to be inflexible prerequisites or constitute an exhaustive formula." *Patriot Mfg.*, 996 F. Supp. 2d at 1125. Instead, "[b]ecause

judicial estoppel is an equitable doctrine, a court must consider all of the equities of a particular case." *Id.* "Specifically, it 'may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake.'" *Queen*, 734 F.3d at 1087 (quoting *New Hampshire*, 532 U.S. at 753). Accordingly, the circumstances in which a court may employ judicial estoppel will vary, and it "should be applied narrowly and cautiously." *Patriot Mfg.*, 996 F. Supp. 2d at 1125.

"The Tenth Circuit has 'recognized the vitality of the doctrine [of judicial estoppel] in the specific context of bankruptcy proceedings." *Reese v. HomeAdvisor, Inc.*, No. 20-2566-JAR-GEB, 2021 WL 3129447, at *4 (D. Kan. July 23, 2021) (citing *Autos, Inc. v. Gowin*, 244 F. App'x 885, 890 (10th Cir. 2007)) (further citations omitted). In fact, in many cases, "debtors 'who have failed to disclose legal claims to the bankruptcy court without credible evidence of why they did so' have been judicially estopped from [pursuing] such claims.'" *Id.* (citation omitted). Many of these cases, however, relied upon *Eastman v. Union Pacific Railway Co.*, 493 F.3d 1151 (10th Cir. 2007), for judicial estoppel principles in the context of bankruptcy proceedings. And the Tenth Circuit's opinion in *Eastman* was recently abrogated in part by the United States Supreme Court.

In *Keathley v. Buddy Ayers Construction, Inc.*, the United States Supreme Court "assum[ed] without deciding that judicial estoppel can apply in the bankruptcy context and that 'inadvertence or mistake' can function as an exception

to that application."[5] 608 U.S. at 655. The Supreme Court concluded that the Fifth Circuit's test for "inadvertence or mistake," which directed courts to consider "whether the debtor knew of the underlying facts of the claim, and whether there was a potential motive to conceal the claim," was "simultaneously too rigid and too broad." *Id.* at 655–56. Thus, the Supreme Court rejected the test that both the Fifth and Tenth Circuits employed and abrogated in part the Tenth Circuit's holding in *Eastman*. *Id.* at 653–54.

With these principles in mind, the Court will consider whether judicial estoppel is applicable in this case.

**A. Clearly Inconsistent Positions**

Defendant argues that Plaintiff's failure to include her potential employment discrimination claims in her bankruptcy filing, and her continued failure to amend her property schedules in her bankruptcy case to include the claim, constitutes a clearly inconsistent position with her claims in this case. Plaintiff argues that her Title VII and KAAD claims did not exist at the time of her bankruptcy filing in August 2023, so she did not take clearly inconsistent positions. In addition, she asserts that she was not constructively discharged until January 2024—after the filing of her Amended Bankruptcy Plan in December 2023. Finally, she asserts that once she became aware of the issue in Defendant's Motion to Dismiss, she amended

---

[5] The Court notes that several concurrences question the use of judicial estoppel. *See Keathley*, 608 U.S. at 657 (J. Thomas, concurring) ("express[ing] doubt about the foundation of the doctrine of judicial estoppel"); *Id.* at 662 (J. Sotomayor, concurring) (noting that it "may not ever make sense to apply judicial estoppel when bankruptcy proceedings are pending, and why, in any context, judicial estoppel should always turn on the totality of the circumstances").

her Schedule A/B: Property to reflect her claims because her bankruptcy remains open.

The Tenth Circuit has stated, in several cases, that “failing to disclose a potential claim as an asset [in a bankruptcy case] is clearly inconsistent with then prosecuting an action in pursuit of that claim.” *Anderson v. Seven Falls Co.*, 696 F. App’x 341, 345 (10th Cir. 2017) (citations omitted). As noted above, however, the Supreme Court’s recent decision also impacts the Court’s analysis. In *Keathley*, the Supreme Court considered “inadvertence or mistake” in the context of determining whether a party’s prior position was inconsistent. 608 U.S. at 655. The Supreme Court directed courts to examine the “totality of the circumstances” surrounding the plaintiff’s failure to report her claims earlier. *Id.* at 656. The court noted that the consideration of “whether the debtor knew of the underlying facts of the claim” was too broad because it was “rare for a debtor to be unaware of the underlying facts of his claim, and a debtor will almost always hypothetically benefit from not revealing such a claim to his creditors.” *Id.* Thus, the Supreme Court rejected a “one-size-fits-all test that requires courts to view as purposeful nearly every bankruptcy omission.” *Id.* Instead, the Supreme Court directed courts to “consider all the particulars” when conducting an equitable inquiry. *Id.* at 655–56.

The timeframe of events in this case show That in June and July of 2023, Plaintiff experienced some discriminatory conduct in the workplace. Plaintiff filed for bankruptcy on August 7, 2023. On August 28, 2023, Plaintiff filed her first EEOC claim. Plaintiff filed an Amended Bankruptcy Plan on December 19, 2023.

Plaintiff alleges that she was constructively discharged on January 5, 2024. The Bankruptcy Court confirmed Plaintiff's bankruptcy plan on December 31, 2024. On February 7, 2024, Plaintiff filed a second EEOC charge. Approximately 18 months later, on August 29, 2025, Plaintiff received a Right to Sue letter on her second EEOC charge. On September 8, 2025, Plaintiff received a Right to Sue letter on her first EEOC charge. On November 26, 2025, Plaintiff filed this lawsuit. Defendant filed its Motion to Dismiss on February 3, 2026. And Plaintiff filed an Amended Bankruptcy Schedule on March 19, 2026, including the claims in this lawsuit.

Defendant argues that Plaintiff has taken a clearly inconsistent position for years. It first argues that Plaintiff's claims accrued before she filed for bankruptcy in August 2023 because Plaintiff had experienced racially discriminatory behavior in the workplace in June and July 2023. On August 7, 2023, however, when Plaintiff filed for bankruptcy, she did not have an employment discrimination claim, even if she was trying to determine if she had one. At that point, she had not filed her EEOC charge and did not do so until August 28. As noted by the Supreme Court in *Keathley*, knowledge of the underlying facts is "too broad" of a test for determining mistake or inadvertence because a debtor will almost always know of the underlying facts. *Keathley*, 608 U.S. at 656. Thus, the Court cannot find a clearly inconsistent position at the time of the bankruptcy filing.

On December 19, 2023, Plaintiff filed an Amended Bankruptcy Plan, and on January 31, 2024, the bankruptcy court confirmed Plaintiff's amended plan. Defendant highlights the fact that more than two years have passed since the

bankruptcy court confirmed Plaintiff's amended plan, and as of the date of Defendant's Motion to Dismiss (February 3, 2026), Plaintiff had not filed an amended property schedule.

Again, however, the Court must consider the totality of the circumstances. When Plaintiff filed an Amended Bankruptcy Plan in December 2023, Plaintiff's first EEOC charge remained pending with the EEOC. At the time Plaintiff's plan was confirmed on January 31, 2024, Plaintiff had not filed a second EEOC charge. She filed her second charge on February 7, 2024. Plaintiff's two EEOC charges remained pending with the EEOC until August and September of 2025 as the EEOC did not issue Right to Sue Letters until then.

The Court recognizes that previous cases from the District of Kansas have noted that a plaintiff must disclose discrimination claims even if a lawsuit has not yet been filed. *See Reese*, 2021 WL 3129447, at *5 (citation omitted). Several of the cases from the District of Kansas, however, involved a plaintiff who had already obtained a Notice of Right to Sue from the EEOC or had already filed a lawsuit before filing for bankruptcy. *See Cole v. Convergys Customer Mgmt. Grp., Inc.*, No. 12-2404-SAC, 2013 WL 2151586, at *4 (D. Kan. May 16, 2013) (noting that the plaintiff received her EEOC right to sue letter two weeks before her bankruptcy filing and never fully disclosed the scope of her claims to the bankruptcy court); *Higgins v. Potter*, No. 08-2646-JWL, 2010 WL 11526772, at *1 (D. Kan. Aug. 20, 2010) (stating that the plaintiff had filed her employment discrimination lawsuit eleven months before filing for bankruptcy); *see also Queen*, 734 F.3d at 1085

(noting that the plaintiffs had filed a lawsuit in the federal district court for the District of Wyoming and subsequently filed for bankruptcy without disclosing those claims to the bankruptcy court). And although Defendant highlights a two-year delay, nothing occurred in the 18 months between February 2024 and August 2025 as the charges remained pending with the EEOC. In addition, Plaintiff could not file a lawsuit during that time because she had not received a Notice of Right to Sue. *Mackley v. TW Telecom Holdings, Inc.*, 296 F.R.D. 655, 661 (D. Kan. 2014) (noting that "[i]t is only after the claimant receives a right-to-sue letter from the administrative agency that he or she can initiate a lawsuit") (citing *Kinney v. Blue Dot Servs. of Kan.*, 505 F. App'x 812, 814 (10th Cir. 2012)). Thus, a substantial portion of time was not based on Plaintiff actively pursuing her claims in court.

Plaintiff, however, filed suit on November 26, 2025. And at that time, she did not file, and had not filed, an amended property schedule. On February 3, 2026, when Defendant filed its Motion to Dismiss asserting judicial estoppel as a basis for dismissal, Plaintiff had still not filed an amended bankruptcy schedule to disclose the causes of actions she asserts in this lawsuit. It was only on March 19, 2026, that Plaintiff filed an Amended Schedule A/B: Property that identified "[p]otential claims of discrimination and retaliation against Rossville Healthcare and Rehabilitation Center under Title VII of the Civil Rights Act of 1964 and the Kansas Act Against Discrimination on the basis of race." (Doc. 20-1 at 9).

The fact that Plaintiff waited until after Defendant filed its motion gives the Court pause when determining whether Plaintiff's inconsistent position was based

on inadvertence or mistake. Although Plaintiff argues that she did not have knowledge of her claims prior to her bankruptcy filing, she fails to provide any substantive reason for the failure to update her Schedule A/B: Property during the pendency of her bankruptcy proceedings, particularly after she filed suit in this Court. Furthermore, the Court notes that she requested an approximate one-month extension of time to file her response to Defendant's Motion to Dismiss, and she only amended her Schedule A/B: Property with the bankruptcy court the day before filing her response with this Court.[6] Thus, based on the timeline of the facts, the Court has concerns with whether Plaintiff presented clearly inconsistent positions. However, even if the Court were to conclude that Plaintiff presented a clearly inconsistent position, the Court must consider additional factors and other circumstances to determine whether judicial estoppel is applicable.

**B. Persuasion of Bankruptcy Court to Accept Earlier Position**

Another factor to consider when determining if judicial estoppel is applicable is whether Plaintiff "has succeeded in persuading" the bankruptcy court to accept her earlier position such that judicial acceptance of her position now "would create the perception that either the first or the second court was misled." *New Hampshire*, 532 U.S. at 750 (quotation marks and citation omitted). The "concern is not so much with whether [the plaintiff] acted with some nefarious motive," but whether "judicial acceptance of an inconsistent position in a later proceeding would

[6] The Court notes that Plaintiff also failed to file her response to Defendant's motion in a timely manner. *See* Doc. 26 (Judge Crabtree's order admonishing both parties' positions and actions in the case.)

introduce the risk of inconsistent court determinations and thus pose a threat to judicial integrity." *Queen*, 734 F.3d at 1091 (quoting *Paup v. Gear Prods., Inc.*, 327 F. App'x 100, 107 (10th Cir. 2009)).

Defendant argues that Plaintiff actively concealed her claims which deceived her creditors and misled the bankruptcy court about the scope of the estate. Yet, Plaintiff's bankruptcy proceedings are ongoing, so there has not been a discharge of her debts based on her omission of the claims in the Schedule A/B: Property. *See Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1049 (8th Cir. 2006) (noting that "no judicial acceptance of [the plaintiff's] inconsistent position occurred" because "the bankruptcy court never discharged [the plaintiff's] debts based on the information that [the plaintiff] provided in his schedules").[7] Furthermore, it does not appear that judicial acceptance of Plaintiff's claims in this case would bring the risk of an inconsistent determination from the bankruptcy court since Plaintiff's bankruptcy case is ongoing, and her debts have not been discharged based on her statements to that court. *See Queen*, 734 F.3d at 1092 (noting that the plaintiff succeeded in persuading the bankruptcy court to accept the plaintiffs' materially inconsistent position in their amended filings and subsequently granted the plaintiffs a discharge in bankruptcy on those filings). Accordingly, the Court finds that this factor does not weigh in favor of judicial estoppel.

### C. Substantial Unfair Advantage

---

[7] The Court also notes that during the 18-month pendency of Plaintiff's charges with the EEOC, there were no additional assets for Plaintiff's creditors as Plaintiff could not bring a lawsuit at that time.

Another consideration for judicial estoppel is whether Plaintiff would derive an unfair advantage or would impose an unfair detriment to the opposing party if not estopped. *New Hampshire*, 532 U.S. at 751. Defendant argues that Plaintiff's failure to disclose her claims puts her in a position to reap a potential recovery, giving her an unfair advantage to her creditors. Yet, Plaintiff has amended her property schedule, and her potential recovery is not shielded from her creditors or the bankruptcy court. The only party who appears to gain an unfair advantage is Defendant. If Plaintiff is estopped from bringing her claims here, she would lose the ability to litigate her employment discrimination claims. Nor could she potentially recover on her claims, which might result in unfair detriment to her and her creditors. Instead, Defendant would obtain the unfair advantage because "the only 'winner' in this scenario is the alleged bad actor in the estopped lawsuit." *Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 275 (9th Cir. 2013) (citation omitted).

Again, judicial estoppel is based on equitable principles, and equity does not favor prohibiting an employment discrimination lawsuit on the basis that when Plaintiff filed for bankruptcy, she had not yet filed a charge with the EEOC, let alone received a right to sue letter. Although the Court has concerns with Plaintiff's timing of the amendment of her Schedule A/B: Property in bankruptcy court, Plaintiff's bankruptcy is proceeding, and Plaintiff did not receive a discharge in bankruptcy based on an inconsistent position. Accordingly, the Court finds judicial estoppel inapplicable in this case.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, or alternatively, for Summary Judgment (Doc. 6) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Supplement to Reply (Doc. 31) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 30th day of September 2026.

ANTHONY J. POWELL
UNITED STATES DISTRICT JUDGE